**ACCESS SYSTEMS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Avineon, Inc., Intervenor.**

No. 08–708C.

United States Court of Federal Claims.

Oct. 10, 2008.

Timothy Sullivan, Washington, DC, for plaintiff.

Michael Austin, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Kenneth Dintzer, Assistant Director, for defendant. Lisa Baker, United States Marine Corps, of counsel.

Brian Caney, Vienna, VA, for intervenor.

## OPINION

ERIC G. BRUGGINK, Judge.

This is an action brought pursuant to the court's bid protest jurisdiction. *See* 28 U.S.C. § 1491(b) (2006). More specifically, the complaint invokes our jurisdiction to review decisions by an agency to override the automatic stay of an award triggered by 31 U.S.C. § 3553(c) (2006), upon the filing of a bid protest at the Government Accountability Office ("GAO"). The original contract at issue ("original contract") involved an award by the Marine Corps Systems Command ("MCSC") for information technology services. The contract was for a one-year term, with the possibility of four one-year renewals. The agency awarded the contract on September 17, 2008, to Avineon, Inc. ("Avineon"). Avineon's motion to intervene is granted.

Although the Contracting Officer ("CO"), Lisa Botkin, ordered Avineon to stop work on September 26, 2008, the substance of plaintiff's complaint is that MCSC thwarted the effect of the stay by simultaneously awarding a 120-day bridge contract for identical, interim information technology services to Avineon without competition. Plaintiff's complaint seeks injunctive relief in the form of an order directing MCSC and Avineon to cease performance on the bridge contract.

During the initial telephonic status conference, held October 6, 2008, the parties agreed that the threshold question was whether the bridge contract constituted a de facto override of the automatic stay. Only if there had been an override would it be necessary, pursuant to the decision in *RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286 (Fed.Cir.1999), to address the merits of an override decision. For that reason, the court proposed, and the parties agreed, that the CO would furnish an affidavit explaining why a bridge contract was utilized. A hearing was scheduled October 7, 2008, with the understanding that the CO would be available for examination upon the affidavit. The affidavit was filed, the hearing was held, and the CO testified. Without objection from the parties, the court deemed the matter ready for ruling pursuant to Rule 56.1 of the Rules of the United States Court of Federal Claims. The record consists solely of the affidavit and the testimony.

The threshold inquiry in this case is whether there has indeed been an override of the automatic stay imposed on the original contract. Plaintiff alleges that the bridge contract between MCSC and Avineon is the counterpart to an override and that, in essence, defendant is using the bridge contract as a method of circumventing the formal requirements of 31 U.S.C. § 3553(d)(3)(C)(i). Defendant contends that the CO's affidavit and testimony confirm that the bridge contract is distinct from the original contract and does not constitute a de facto override. At the conclusion of the hearing, the court announced its finding that the bridge contract between defendant and Avineon did not constitute an override of the automatic stay. Our reasons for so finding are summarized herein.

The automatic stay was "intended to preserve the *status quo* during the pendency of the protest so that an agency would not cavalierly disregard the GAO's recommendation to cancel the challenged award." *Advanced Sys. Dev., Inc. v. United States*, 72 Fed.Cl. 25, 30–31 (2006) (citing *PGBA, LLC v. United States*, 57 Fed.Cl. 655, 660 n. 8 (2003)). Furthermore, " 'Congress included these bid protest provisions to help ensure that the mandate for competition would be followed and that vendors wrongly excluded from Federal contracts would receive fair relief.' " *Reilly's Wholesale Produce v. United States*, 73 Fed.Cl. 705, 710 n. 8 (2006) (quoting H. Rep. No. 99–138 (1985)). The automatic stay therefore was intended to guarantee that plaintiffs could receive "fair relief" and would not be prejudiced in their protest before the GAO.

Section 3553(d)(3)(C), however, allows the "head of the procuring activity" to override an automatic stay and authorize performance of the contract if performance "is in the best

interests of the United States" or if "urgent and compelling circumstances ... will not permit waiting for the decision of the [GAO]." *Id.* § 3553(d)(3)(C)(i). The head of the procuring activity must first deliver a written finding to the Comptroller General. *Id.* The government and the contract awardee may then commence performance despite disturbing the status quo and possibly prejudicing the protesting offeror at the GAO.

No such finding was made in this case, however, because the agency takes the position that it was unnecessary. This case is therefore unlike traditional override cases in that we are asked to decide whether the bridge contract represents the functional equivalent of an override. We have not been presented with any decisions discussing this question, but in our view the relevant question is whether the bridge contract shares the same character or function as a formal override and, thus, whether the bridge contract could prejudice plaintiff in its protest before the GAO or in subsequently performing the work if it is successful in its protest.

The facts here demonstrate that the character of the bridge contract is distinctly different from an override because the bridge contract does not disturb the status quo with respect to the original contract. The testimony and affidavit of the CO clearly show that she issued a stop-work order to Avineon, preventing further performance on the original contract. While an override is meant to authorize performance on the protested contract because of special circumstances, a bridge contract can be a separate, self-contained contract. In this case, it was. MCSC will receive information technology services only during the pendency of the GAO protest. The appropriation used to fund the bridge contract is also separate from that used to fund the original contract, and the appropriated funds for the original contract remain untouched. The CO has also affirmed that the bridge contract's 120–day term is independent of the term of the original contract. The bridge contract's term will thus not lessen the amount of work. Although, as plaintiff points out, the bridge contract is for the identical information technology services involved in the original con-

tract, this fact alone is insufficient to prove that the bridge contract is an iteration, in whole or in part, of the original contract and, thus, an override. Contracts may share the same subject matter and yet remain separate and distinct from one another. We therefore conclude that the bridge contract is not a partial iteration of the original contract but is a new contract with a distinct character and function. The status quo with respect to the original contract remains unchanged.

There is also no reason to think that the award to Avineon will prejudice plaintiff in the action before the GAO. Moreover, if plaintiff is successful at the GAO, the original contract, in its entirety, will still be available to plaintiff.

For these reasons, the court finds that the bridge contract between MCSC and Avineon is not an override of the automatic stay as provided for by section 3553(d)(3)(C)(i). The court is therefore not required to reach the merits of an override. Accordingly, the Clerk is directed to enter judgment for the United States and to dismiss the complaint.